IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BARBARA SILVA,

    Plaintiff,

v.                                                                                           CV 17-1224 MV/JHR

UNITED STATES OF AMERICA,

    Defendant.

## SUPPLEMENTAL PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

       This matter comes before the Court pursuant to the Order Sustaining Plaintiff's Objection and Rejecting Magistrate Judge's Proposed Findings and Recommended Disposition, [Doc. 44], filed July 20, 2020, and the Order of Reference entered by presiding District Judge Martha Vazquez on August 28, 2019, which directed Magistrate Judge Jerry Ritter to "perform any legal analysis required to recommend to the Court an ultimate disposition of [this] case." [Doc. 39]. Judge Vazquez rejected my recommendation that this case be dismissed without prejudice for lack of subject matter jurisdiction under the Federal Tort Claims Act ("FTCA") (untimeliness) and remanded the case for further consideration of the grounds for dismissal stated in the United States' Motion to Dismiss. [*See* Docs. 31, 34, 42 and 43]; *see generally* 28 U.S.C. § 2401. Having carefully reviewed the briefing a second time and after consulting the applicable law, I conclude that the Court still lacks subject matter jurisdiction to consider Ms. Silva's claims under the FTCA, this time because the Act's exceptions apply, and therefore I again recommend that the government's motion be **granted** and that this case be **dismissed without prejudice**.[1]

---

[1] "It is fundamental, of course, that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal must be without prejudice." *Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016) (quoted authority and internal alterations omitted).

I.      **INTRODUCTION**

The government mistakenly issued the same social security number to Ms. Silva that it had already issued to another person. [Doc. 23, p. 1]. There is no question that Ms. Silva was harmed by the resulting confusion of identities over many years, and the government all but admitted fault for at least some of the harm its negligence caused in a letter it sent to her in November 2015. [Doc. 31-1, p. 7]. Unfortunately, the government's admission of fault does not mean that Ms. Silva can state a claim to recover monetary damages for its failures.

As a general matter, the United States government enjoys sovereign immunity, which has only been waived in narrow circumstances by the Federal Tort Claims Act ("FTCA"). Even where, as here, the government has clearly erred and admitted fault, recovery for certain torts, and by extension, certain categories of damages, is prohibited by the language of the Act and case law construing it. The wisdom of these prohibitions is for Congress to determine, and several federal appellate courts, including the Tenth Circuit, have reasoned that claims analogous to Ms. Silva's cannot be brought even where a non-discretionary duty is identified. Finally, to the extent that Ms. Silva's non-contractual claims are not barred by the FTCA's exceptions, she does not state a valid claim for infliction of emotional distress under New Mexico law as required to recover under the FTCA. Therefore, I again recommend that this case be dismissed without prejudice.

II.     **BACKGROUND**

Ms. Silva was issued a social security number that belonged to someone else when she was 10 years old, in June of 1976. [Doc. 23, p. 1]. In late 1992, while she was enlisted in the Navy, Ms. Silva became aware that a garnishment action was entered against her. [*Id.*]. In January 1993 she went to a Social Security Administration office and explained that someone else was using her social security number ("SSN"). [*Id.*, p. 2]. At that time, Ms. Silva told the Administration that she

had to keep clearing her credit report and that she believed identity theft was involved. [*Id.*]. While the Administration issued Ms. Silva a new social security number and transferred wages paid from the old number to the new number for retirement purposes, it did not correct Ms. Silva's impression that her identity had been stolen and refused to provide sufficient documentation to allow Ms. Silva to clear her name and continue serving in the Navy, resulting in her decision to accept an honorable discharge after 15 years of service.

Plagued by creditors for years, Ms. Silva reached out to politicians to compel the Administration to take meaningful action. She wrote to Senator Martin Heinrich in September 2015, explaining that the Administration issued the same social security number to her and another person and that she had tried and failed to change her military records so she could re-enlist. [Doc. 31-1, p. 12]. Upon the Senator's inquiry, Ms. Silva received a letter from the office of the Regional Commissioner of Social Security in November 2015, admitting "fault in assigning you the Social Security number … previously assigned to another individual…." [Doc, 31-1, p. 7 (ellipsis supplied)]. The Administration stated its sincere regret for "the error and the problems and inconvenience [Ms. Silva] experienced." [*Id.*].

After notifying the Administration that she intended to sue and receiving an administrative denial, Ms. Silva filed her initial Complaint in this Court on December 13, 2017. [Doc. 1]. Her operative Complaint states three claims. [*See* Docs. 23, 26]. First, Ms. Silva alleges that the Social Security Administration employee who issued her (the already-issued) social security number had a duty to ensure its accuracy. [Doc. 23, p. 3] Second, she claims that a second Administration employee had a duty to verify the first employee's actions to ensure accuracy. [*Id.*]. Third, Ms. Silva states that the Administration had a duty to notice the discrepancies in her retirement earnings as wages were earned and correct its mistake(s). [*Id.*; *see also* Doc. 23, p. 4]. As relief, she asks

that the Court hold the government accountable for its "deliberate indifference and negligent errors" affecting her privacy rights through an award of damages pursuant to the Federal Tort Claims Act and an order requiring the Administration to contact all private credit reporting and governmental agencies to replace the incorrect number with the correct one. [Doc. 23, p. 8].

The government filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on July 25, 2019, claiming that Ms. Silva's claims are barred because the United States did not waive sovereign immunity under the FTCA. [Doc. 31, p. 5]. First, the government argued that Ms. Silva's claims arise under the Social Security Act, not the Tort Claims Act, leaving the Court without subject matter jurisdiction. [*Id.*, pp. 5-7]. Second, the government argued that Ms. Silva's claims sound in defamation, which is excepted from the Tort Claims Act's waiver of immunity. [*Id.*, pp. 7-8]. Third, it argued that Ms. Silva's claims were untimely. [*Id.*, pp. 8-10]. Finally, the government argued that Ms. Silva's claims are not cognizable under New Mexico law, precluding its liability under the Federal Tort Claims Act's waiver. [Doc. 31, pp. 10-15]. Ms. Silva responded to the motion on August 5, 2019 and submitted additional evidence on December 2, 2019. [Docs. 34, 40].

Finding the government's timeliness argument persuasive, I recommended that Ms. Silva's claims be dismissed without prejudice for lack of federal subject matter jurisdiction on May 16, 2020. [Doc. 42]. Ms. Silva objected, and presiding District Judge Vazquez sustained her objections on July 20, 2020. [Docs. 43, 44]. Judge Vazquez accordingly rejected my proposed disposition of this case and remanded the matter to me for further analysis of the issues raised by the government's motion to dismiss. [Doc. 44, p. 1].

### III.    LEGAL STANDARDS

The government's Motion asserts that this case must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). [Doc. 31, p. 4]. Federal courts are courts of limited jurisdiction, and they must presume that they lack jurisdiction unless the party invoking federal jurisdiction proves otherwise. *See Kucera v. Central Intelligence Agency*, 754 F. App'x 735, 738 (10th Cir. 2018) (unpublished).  While filings of pro se litigants are afforded liberal construction, all pleadings are held to this standard. *Id.* "Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citation omitted). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion: the court must consider the complaint's allegations to be true." *De Baca v. United States*, 403 F. Supp. 3d 1098, 1113 (D.N.M. 2019) (Browning, J.)  (citation omitted). The Court finds that the government's jurisdictional arguments invoking sovereign immunity do not require analysis of the facts underlying Ms. Silva's claims; therefore, resolution of this case turns on the allegations stated in the complaint. *Garling v. United States Envtl. Prot. Agency*, 849 F.3d 1289, 1293 n.3 (10th Cir. 2017) ("[W]hen a defendant asserts that [a] FTCA complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged.") (quoted authority omitted).

 The government's motion also relies on Federal Rule of Civil Procedure 12(b)(6), which permits dismissal of a plaintiff's case for failure to state a claim only on review of the facts as alleged. [*See generally* Doc. 31]. That is, when resolving motions brought under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the Complaint and views them in

the light most favorable to Ms. Silva, drawing all reasonable inferences in her favor. *See Garling v*, 849 F.3d at 1292-1293. In other words, the Court may only dismiss a case for failure to state a claim under Rule 12(b)(6) where a reasonable person could not plausibly conclude that the facts alleged could result in a finding of liability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

IV. **ANALYSIS**

While I recommend that the Court find that the government has a dispositive jurisdictional argument, it has another argument which is not dispositive. I address that argument first.

A) **The government's argument, that Ms. Silva's claims arise under the Social Security Act (because it issues social security numbers and maintains social security records) thereby precluding her suit under the Federal Tort Claims Act, should be rejected.**

The United States' position that Ms. Silva's claims are barred under the FTCA because they arise under the Social Security Act should be rejected. [Doc. 31, pp. 5-7]. The First Circuit found the government's position as argued here "unacceptable" in *Jimenez-Nieves v. U.S.*, 682 F.2d 1, 3-4 (1st Cir. 1982). There, the government raised the same type of argument it does here – that the FTCA claim was excepted by Section 405(h) of the Social Security Act. *Id.* The appellate court held that some of *Jimenez-Nieves'* claims did indeed fall within the 405(h) exception, but not the allegation that an agency employees' negligent typographical error caused the government to dishonor benefit checks. *Id.* at 2-3. The court determined that "[t]he language of § 405(h) [of the Social Security Act] applies only to a 'claim arising under th[at] subchapter[]' [and] [a]n action for damages based on a tort committed in the course of administering the Social Security Act does not arise" under the Act. *Id.* at 3-4. The allegation of negligence, therefore, merited further examination by the district court for possible recovery under the tort law of Puerto Rico. *Id.* at 6.

6

While *Jimenez-Nieves* is not binding on this Court, its reasoning is highly persuasive. As the First Circuit noted, the government's rationale would effectively abolish a victim's ability to sue the United States' under the FTCA anytime another statutory or regulatory scheme applies because of the procedural requirements and unique discretion implicated by administrative review. *See* 682 F.2d 1 at 3. The better rule is that a tort, otherwise actionable under the FTCA but committed in the course of administering a different federal law, does not arise under the latter act for the purposes of excepting the claim from review as a matter of federal jurisdiction. The ultimate jurisdictional analysis for a tort committed while administering a federal program is whether it is within the waiver of sovereign immunity in the FTCA.

**B) Ms. Silva's claims are barred by an exception to the FTCA's waiver of liability, requiring dismissal for want of federal subject matter jurisdiction.**

The FTCA states that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances[.]" 28 U.S.C. § 2674. "If a claim against the government falls within an exception to the FTCA, the cause of action must be dismissed for want of federal subject matter jurisdiction." *Estate of Trentadue ex rel. Aguilar v. U.S.*, 397 F.3d 840, 853 (10th Cir. 2005)). There are many exceptions to the government's tort liability due to the discretionary nature of many government actions, but the United States does not invoke those here. Instead, it cites the exception of Section 2680(h) disallowing "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[]". 28 U.S.C. § 2680(h).

As noted, Ms. Silva's claim is that an Administration employee negligently issued a Social Security Number that already belonged to another individual; a second employee negligently reviewed the first employee's actions, failing to detect the error; and subsequent employees failed

to recognize and correct the error(s) in subsequent years. [*See* Doc. 23]. Ms. Silva does not label these claims, but federal and New Mexico case law indicate that they sound in defamation, negligent misrepresentation, interference with contractual rights, and negligent or intentional infliction of emotional distress based on the injuries to reputational and economic interests for which Ms. Silva is claiming damages.

      **i.**      **Defamation (Libel & Slander):**

Ms. Silva's claims seek to recover for injuries to her economic and personal reputation due to confusing her financial history with the negative history of another. While the Administration did not affirmatively spread lies about Ms. Silva, its negligent association of two identities was to the detriment of her financial reputation. Defamation is excepted from the FTCA waiver of sovereign immunity by § 2680(h). "The interest served by allowing recovery for defamation … is the interest of compensating individuals for injury to reputation." *Smith v. Surden*, 2012-NMSC-010, ¶ 34, 276 P.3d 943. As a result, "[a]ll … claims which involve injury to [Ms. Silva's] reputation and the consequent harm suffered by [her] when the Social Security Administration actions … implicitly communicated defamatory statements about [her] are … barred by the Federal Tort Claims Act." *Jimenez-Nieves v. U.S.*, 682 F.2d 1, 3-4 (1st Cir. 1982).

Although not directly on point, the Tenth Circuit held two years after *Jimenez-Nieves* that harm to reputation caused by failure of a federal agency to "correct" its records fits within the FTCA's exception for defamation. *Bergman v. U.S.*, 751 F.2d 314, 317 (10th Cir. 1984). Other circuits have issued similar holdings. For example, the Eighth Circuit reviewed the negligent maintenance of a CIA agent's employment records and found that the resulting communication of false and derogatory information fell within the FTCA defamation exception. *Moessmer v. U.S.*, 760 F.2d 236, 237-238 (8th Cir. 1985). Likewise, the Fourth Circuit held that a breach of the duty

to use reasonable care in maintaining the accuracy of personnel records fell within the defamation exception when harm resulted from untrue communication. *Talbert v. U.S.*, 932, F.2d 1064 (4th Cir. 1991). As that court said: "[a]rtful pleading cannot alter the fact that [a] claim 'resounds in the heartland of the tort of defamation [when] the injury is to reputation [and] the conduct is the communication of an idea, either implicitly or explicitly.'" *Id.* (quoting *Jimenez-Nieves v. U.S.*, 682 F.2d 1, 6 (1st Cir. 1982) (bracketed language supplied)).

Therefore, to the extent that Ms. Silva claims damages to her reputation as a result of the Administration's false statements, the United States retains immunity.

### ii. Negligent (and Willful) Misrepresentation:

The Tenth Circuit has defined misrepresentation under the FTCA as violation of the duty to use care in obtaining and communicating information upon which a party may reasonably be expected to rely in the conduct of economic affairs. *Estate of Trentadue ex rel. Aguilar v. U.S.*, 397 F.3d 840, 854-855 (10th Cir. 2005). Proving such a claim requires reliance and pecuniary loss. *Id.* As with defamation, harm to reputation caused by failure of a federal agency to "correct" its records fits within the FTCA's exception for misrepresentation and deceit. *See Bergman v. U.S.*, 751 F.2d 314, 317 (10th Cir. 1984). Therefore, to the extent that Ms. Silva claims that she relied on the misrepresentations of the SSA, resulting in her pecuniary loss, the United States retains immunity.

### iii. Interference with Contractual Rights:

To the extent that Ms. Silva's claims state a claim for interference with contract rights, they are barred by the § 2680(h) exception to the FTCA. The Eighth Circuit case of *Moessmer v. U.S.*, 760 F.2d 236 (8th Cir. 1985), is analogous. There, the Eighth Circuit reasoned that interference with prospective economic advantage is the equivalent of a claim for interference with contract

rights. *Id.*, at 237-38. Ms. Silva claims harm resulting from the Administration's acts which caused her to lose out on economic opportunities and advantages she might have otherwise obtained had she been issued a unique social security number. To the extent that Ms. Silva claims that the actions of the SSA resulted in interference with her prospective economic advantage, the United States retains immunity.

### iv. Negligent or Intentional Infliction of Emotional Distress:

Obviously, not all common law claims are barred by the § 2680(h) exception to the FTCA waiver of sovereign immunity. *See Jimenez-Nieves v. U.S.*, 682 F.2d 1, 6 (1st Cir. 1982). Intentional infliction of emotional distress is a common example. *See, e.g.*, *Estate of Trentadue ex rel. Aguilar v. U.S.*, 397 F.3d 840, 854-855 (10th Cir. 2005). However, under New Mexico law, prosecution of the standalone tort of negligent infliction of emotional distress generally[2] requires the plaintiff to be a bystander who suffers severe emotional shock due to witnessing trauma to a family member, and recovery for the tort of intentional infliction of emotional distress requires proof of "socially reprehensible" extreme and outrageous conduct, not mere negligence. *Castillo v. City of Las Vegas*, 2008-NMCA-141, 145 N.M. 205, 195 P.3d 870. Therefore, to the extent that Ms. Silva argues that the SSA's actions caused her emotional distress, the United States retains immunity because she has failed to state a valid claim under New Mexico's formulation of both negligent and intentional infliction of emotional distress.

### V. RECOMMENDATION

Ms. Silva suffered a wrong at the hands of the federal government and has alleged resulting financial and emotional harm. The FTCA, however, expressly bars her financial claims, and New Mexico common law does not recognize her emotional distress claim. Therefore, because I

---

[2] With one exception not relevant here. *See Madrid v. Lincoln County Medical Center*, 1996-NMSC-049, 122 N.M. 269, 923 P.2d 1154.

10

conclude that the Court lacks subject matter jurisdiction over this case, **I RECOMMEND** that the United States' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) [Doc. 31] be **granted**, and that this case be **dismissed without prejudice.**

_____
Jerry H. Ritter
U.S. Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**